UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RICARDO DUNCAN,
     Petitioner,

vs.                        Case No.:  1:21cv7/AW/ZCB

SECRETARY FLORIDA DEPARTMENT
OF CORRECTIONS,
     Respondent.
_____/

## **REPORT AND RECOMMENDATION**

This is a state habeas corpus case filed under 28 U.S.C. § 2254. (Doc. 1). Petitioner is Ricardo Duncan, a prisoner in the Florida Department of Corrections.  His petition has nine claims.  Respondent has answered the petition, arguing some of the claims are procedurally barred and the others lack merit. (Docs. 12, 12-1, 12-2).  For the reasons below, Petitioner is not entitled to habeas relief.[1]

## I.    Background

The evidence introduced at trial established that this case began on November 5, 2013, when Herman Brown heard a knock on his door.  (Doc.

---

[1] An evidentiary hearing is not necessary to resolve this matter.  Rule 8(a), Rules Governing Section 2254 Cases.

12-1 at 445-46).[2]  Brown opened the door and found Marquis Corbitt standing there, along with Petitioner. (*Id*. at 447-51).  Brown and Corbitt began pushing each other.   (*Id*. at 453).  Corbitt then instructed Petitioner, "Shoot him.  Shoot him." (*Id*. at 455).  Petitioner responded by pulling a gun from his pocket and shooting Brown in the buttocks. (*Id*. at 457-58).  Brown fell to the ground, and Petitioner fled. (*Id*. at 458-59).

Corbitt then ran inside Brown's apartment where he encountered Athena Stone, Brown's girlfriend. (*Id*. at 460, 517).  Corbitt pulled out a gun, put it to Stone's head, and demanded, "Where it's at? Where it's at? Where it's at?" (*Id*. at 526).  Corbitt then ran down the hallway and began rifling through cabinets in the kitchen. (*Id*. at 526-27).  Stone escaped to a neighbor's apartment, and Corbitt ran away. (*Id*. at 527-29).

After fleeing Brown's apartment, Petitioner and Corbitt entered a van driven by Monique Howard. (*Id*. at 430).  Alexis Dallas was also in the van. (*Id*. at 375-77).  The van belonged to Howard, and she had used it to drive Petitioner and Corbitt to the apartment complex where Brown lived. (*Id*. at 412-25).

---

[2] The Court refers to the document numbers and page numbers automatically assigned by the Court's electronic filing system.

The police eventually located the van and stopped it. (*Id*. at 693-94). Stone came to the scene and participated in a "show-up" identification. (*Id*. at 531-33). During the "show-up," Stone identified Corbitt as the man who had struggled with Brown and put the gun to her head. (*Id*. at 531-33). The following day, the police showed Brown a photo lineup. (*Id*. at 478). He identified Petitioner and Corbitt as the assailants. (*Id*. at 482).

Petitioner and Corbitt were charged in Florida state court. (*Id*. at 108). Their cases were severed for trial. At Petitioner's trial, the jury heard testimony from Brown, Stone, Howard, Dallas, and others. At the conclusion of the trial, the jury convicted Petitioner of attempted home invasion robbery with a firearm, conspiracy to commit armed home invasion robbery, and possession of a firearm by a convicted felon. (*Id*. at 139). The jury specifically found that Petitioner possessed and discharged a firearm resulting in serious injury during commission of an attempted robbery. (*Id*.).

After trial, Petitioner moved for a judgment of acquittal. The trial court granted that motion with regard to the conspiracy count. (*Id*. at 166). The trial judge subsequently sentenced Petitioner to thirty years

of imprisonment for the attempted home invasion robbery and a consecutive term of fifteen years of imprisonment for the possession of a firearm. (*Id.* at 184-88).

## II.    Procedural History

Petitioner appealed his conviction to Florida's First District Court of Appeal ("First DCA"). (Doc. 12-1 at 1409-31). That court affirmed. (*Id.* at 1462). Petitioner later filed a Motion to Correct Illegal Sentence, which the trial court granted in part and reduced Petitioner's sentence on the attempted home invasion robbery count from thirty to twenty-five years' imprisonment. (Doc. 12-2 at 26-41). Petitioner appealed, and the First DCA affirmed. (*Id.* at 133-34).

Petitioner then moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.* at 163-80). The trial court denied the motion. (*Id.* at 182-96). Petitioner appealed, and the First DCA affirmed. (*Id.* at 313-27, 332-33).

Next, Petitioner took his postconviction efforts to federal court by filing the current habeas petition under 28 U.S.C. § 2254. (Doc. 1). His habeas petition presents nine claims. (Doc. 1). As will be discussed

below, four of those claims are procedurally barred.  The other five lack

merit.

## III.  Discussion

### A.  Grounds Five, Six, Seven, and Eight are unexhausted and procedurally defaulted

Respondent argues that Grounds Five, Six, Seven, and Eight

should be denied because they are unexhausted and procedurally

defaulted. (Doc. 12 at 9-15).  More specifically, Respondent argues that

although Petitioner presented these four issues to the state trial court in

his Rule 3.850 motion, he did not raise them in his appeal from the denial

of that motion.  (*Id*.).  Thus, Respondent says the claims have not been

exhausted.   And Respondent contends the unexhausted claims are

procedurally defaulted because state procedural rules prevent Petitioner

from returning to state court to exhaust the claims today.

#### 1.    Exhaustion requirement

Let's start the discussion by summarizing the exhaustion

requirement for § 2254 habeas cases.  That requirement is found in 28

U.S.C. § 2254(b)(1), which provides that an "application for a writ of

habeas corpus on behalf of a person in custody pursuant to the judgment

of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State." This means that a "state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). The exhaustion requirement is "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518 (1982). To satisfy the exhaustion requirement, a petitioner must have "fairly presented" the substance of his federal claim to the state courts.[3] *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012).

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d

---

[3] In habeas cases involving Florida prisoners, "claims for postconviction relief are exhausted once they are appealed to the state district court of appeal. They need not be appealed to the Florida Supreme Court in order to be considered exhausted for federal habeas purposes." *Barritt v. Sec'y Fla. Dep't of Corr.*, 968 F.3d 1246, 1249 n.3 (11th Cir. 2020).

1317, 1344 (11th Cir. 2004) (cleaned up). Exhaustion is not present "merely" because "the federal habeas petitioner has been through the state courts…nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *McNair v. Campbell*, 416 F.3d 1291, 1302-07 (11th Cir. 2005) (cleaned up). Instead, exhaustion requires that the "ground relied upon…be presented face-up and squarely; the federal question must be plainly defined." *Kelley*, 377 F.3d at 1345 (cleaned up).

If a petitioner has not exhausted his claim in state court and it "is clear from state law that any future attempts at exhaustion would be futile," then federal courts "may treat unexhausted claims as procedurally defaulted." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999). And a procedurally defaulted claim will not be considered by a federal habeas court unless "a petitioner can show (1) cause for the default and (2) actual prejudice resulting from the alleged constitutional violation." *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1365 (11th Cir. 2020).

## 2. Petitioner's Grounds Five through Eight are unexhausted

Having summarized the applicable law, it is time to apply it to Petitioner's case. Although Petitioner says that he presented Grounds Five through Eight in his Rule 3.850 motion and his appeal from the denial of that motion (Doc. 1 at 20-28), the record shows otherwise. The record shows that Petitioner presented Grounds Five through Eight in his Rule 3.850 motion. (Doc. 12-2 at 174-78). The state trial court denied the motion, and Petitioner appealed to the First DCA. (*Id.* at 182-96, 313-27). Petitioner filed a brief with the First DCA, wherein he expressly abandoned Grounds Five and Six. (*Id.* at 326). As for Grounds Seven and Eight, they were not raised in Petitioner's First DCA brief. (*Id.* at 326).

"It is well established in Florida courts that claims for which an appellant has not presented any argument, or for which he provides only conclusory argument, are insufficiently presented for review and are waived." *Witherspoon v. Inch*, No. 4:17cv137, 2019 WL 2607375, at *16 (N.D. Fla. May 14, 2019), *adopted by* 2019 WL 2605619. Or to use the language of the Florida Supreme Court, "issues not raised in the initial

brief [of the appellant] are considered waived or abandoned." *Rosier v. State*, 276 So. 3d 403, 406 (Fla. 2019); *see also Roderick v. State*, 284 So. 3d 1152, 1154 (Fla. 1st DCA 2019) (declining to review three of seven postconviction claims because they were not argued in the petitioner's brief).

Here, Petitioner's First DCA brief failed to raise the issues found in Grounds Five through Eight of his habeas petition. Thus, those grounds were abandoned or waived before the First DCA. As a result, they are unexhausted for purposes of habeas review. *See Baker v. Dep't of Corr.*, 634 F. App'x 689, 693 (11th Cir. 2015) (holding that a claim was "not exhausted in state court because [the petitioner] abandoned it on appeal" from the denial of his Rule 3.850 motion); *see also Harris v. Sec'y Dep't of Corr.*, No. 8:16-cv-3199, 2021 WL 5331202, at *19 (M.D. Fla. Nov. 16, 2021) (holding that a claim was unexhausted "because, although [the petitioner] brought the claim in his Rule 3.850 postconviction motion, he failed to brief the claim on appeal from the denial of that motion"). Florida law does not permit Petitioner to return to the First DCA and raise the unexhausted claims today. *See Harris*, 2021 WL 5331202, at *19 (explaining that a petitioner who failed to raise a claim in his state

postconviction appeal could not return to Florida state court and raise the claim because the time to do so had expired); *see also* Fla. R. Crim. P. 3.850(k) (providing a thirty day time period for appealing the denial of a Rule 3.850 motion).

Because state procedural rules would prevent Petitioner from returning to state court to exhaust Grounds Five through Eight, they have been procedurally defaulted.  *See Baker*, 634 F. App'x at 693 (holding that a claim was unexhausted for failure to raise it on appeal from the denial of Rule 3.850 motion and was "subject to a procedural default" because "his state remedy was no longer available because the claim would be time-barred"); *see also Bailey*, 172 F.3d at 1303 (explaining that where an "unexhausted claim would now be procedurally barred due to a state-law procedural default…the exhaustion requirement and procedural default principles combine to mandate dismissal").  As discussed above, a petitioner may only obtain review of a procedurally defaulted claim if he shows cause and prejudice. Petitioner has not even attempted to meet that rigorous standard here. Thus, Grounds Five through Eight of Petitioner's habeas petition are procedurally barred and will not be considered on the merits.

**B.    Petitioner is not entitled to federal habeas relief on his remaining claims**

Petitioner has exhausted Grounds One, Two, Three, Four and Nine.[4]  Because each of those claims was adjudicated on the merits in state court, Petitioner may only obtain habeas relief if he meets the standard found in 28 U.S.C. § 2254(d).  He has not done so.

Under § 2254(d), a federal court may invalidate a state criminal conviction only if the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  This is a "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  When considering a state prisoner's habeas petition under § 2254(d), a federal court is not sitting as an appellate court with

---

[4] Respondent neglected to address Ground Nine in its answer. Nonetheless, Petitioner is not entitled to habeas relief on that claim because it was adjudicated on the merits in state court and Petitioner has not met his burden under § 2254(d).

the mandate of correcting errors that may have occurred in the state court. *See Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (explaining that a federal habeas proceeding is not "a substitute for ordinary error correction through appeal") (cleaned up).

To be contrary to clearly established federal law under § 2254(d)(1), "the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up). And to meet the unreasonable application standard, "a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (cleaned up). Rather, the state court's application of federal law must be "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Id.* (cleaned up). This standard reflects that the writ of habeas corpus is an "extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems." *Ramirez*, 596 U.S. at 377 (cleaned up).

In Grounds One through Four, Petitioner raises claims of ineffective assistance of trial counsel. (Doc. 1 at 7-19). Such claims are governed by the well-worn standard found in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a *Strickland* claim, a petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) prejudice resulted. *Strickland*, 466 U.S. at 687. Under the deficiency prong, the inquiry focuses on "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. As for the prejudice prong, the inquiry focuses on whether the petitioner has shown there is a "reasonable probability" that the outcome would have been different absent counsel's deficient performance. *Id*. at 694. To make the prejudice showing, the "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).[5]

---

[5] Both the *Strickland* standard and the standard for relief under § 2254 are "highly deferential." *Richter*, 562 U.S. at 105. And when—in a case like the current one—"the two apply in tandem, review is doubly" deferential. *Id*. (cleaned up). The Supreme Court has warned that

13

### 1. Ground One:  Trial counsel was ineffective for misadvising Petitioner regarding his right to testify on his own behalf at trial.

In Ground One, Petitioner claims his trial counsel provided ineffective assistance by advising Petitioner against testifying.  (Doc. 1 at 7).   According to Petitioner, he and trial counsel had several conversations about this issue.  And each time they spoke, Petitioner says he expressed a desire to testify.  (*Id.*).   Counsel, however, told Petitioner that it was "not a good idea."  (*Id.*).   Petitioner claims that counsel said that if he testified, then the jury would "automatically" hear about his prior convictions.  (*Id.* at 7-8).   Counsel advised Petitioner that learning this information would likely prejudice the jury against him.  (*Id.* at 8).  Petitioner states that he ultimately chose not to testify because of counsel's advice.  (*Id.*).  According to Petitioner, counsel incorrectly stated that the jury would automatically learn about his prior convictions. Absent that incorrect information, Petitioner claims he would have

---

"habeas courts must guard against the danger of equating unreasonableness under *Strickland*['s]" deficient performance prong with "unreasonableness under § 2254(d)."  *Id*.  Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*.

testified. And Petitioner thinks that if he had testified, there is a reasonable probability that he would have been acquitted because the jury would have observed his demeanor and heard him say that "he did not commit any robbery or possess a firearm on November 5, 2013." (*Id.* at 9).

Petitioner raised this argument in his Rule 3.850 motion. (Doc. 12-2 at 168-70). The state trial court correctly identified *Strickland* as the governing standard and found that Petitioner had met neither the deficient performance nor prejudice prongs. (*Id.* at 184-87). The First DCA summarily affirmed. (*Id.* at 332-33). Because the First DCA summarily affirmed, this Court "look[s] through" to the state trial court's order denying the Rule 3.850 motion and reviews that court's reasoning. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

To satisfy § 2254(d)(1), Petitioner must demonstrate that the state court's rejection of his ineffective assistance claim was contrary to or an unreasonable application of *Strickland*. Petitioner has not satisfied the "contrary to" prong with respect to any of his ineffective assistance of counsel claims because the state trial court correctly identified *Strickland* as the rule governing Petitioner's claims. That leaves the

15

"unreasonable application" prong, which requires the Court to decide if the state court unreasonably applied *Strickland*'s two part test. In making that determination, the Court will assume without deciding that trial counsel performed deficiently by advising Petitioner not to testify. That leaves the prejudice question, which is: Was the state court's decision that Petitioner failed to show a reasonable probability of acquittal had he testified "so obviously wrong that its error lies beyond any possibility for fairminded disagreement"? *Shinn*, 141 S. Ct. at 523. The answer is no.

To establish prejudice on a claim involving counsel's advice about testifying at trial, a habeas petitioner must show: "(1) that he would in fact have testified in his own defense had he been informed adequately about his right to do so; and (2) that his proposed testimony would have altered the outcome of the trial." *Driggers v. Sec'y, Dep't of Corr.*, 834 F. App'x 510, 514 (11th Cir. 2020). Petitioner asserts that he would have testified absent counsel's advice. The Court accepts that assertion for purposes of making the first showing. But Petitioner cannot make the second showing—i.e., he has not established it is reasonably likely that his testimony would have led to an acquittal.

16

As for what he would have said to the jury, Petitioner claims he would have testified that "he was innocent of these crimes; that he did *not* commit any robbery or possess (carry) a firearm on November 5, 2013." (Doc. 12-2 at 169). He argues that if the jury had seen and heard him personally protest his innocence, then it would have been able to assess his demeanor. And that, Petitioner says, would have been reasonably likely to produce an acquittal. The Court disagrees.

All Petitioner has provided is a bald, self-serving declaration of innocence. He has not shown that his testimony would have led to the jury hearing exculpatory or impeachment evidence that it otherwise did not hear. Additionally, Petitioner would have been subject to cross-examination had he testified. And during that cross-examination, the jury would have likely learned about some (or potentially all) of Petitioner's prior felony convictions. *See* Fla. Stat. § 90.610 (permitting a party to attack the credibility of any witness, including an accused, by evidence that the witness has a prior felony conviction). The jury also would have been informed that it could consider those prior convictions when assessing Petitioner's credibility. *See* Fla. Std. Jury Instr. (Crim.) 2.5 (instructing jurors that they can consider a testifying defendant's

17

prior conviction(s) when weighing his credibility). Moreover, Petitioner's attorney argued Petitioner's innocence in closing argument and highlighted why he believed the State failed to meet its burden.

There is no reasonable probability that if Petitioner had testified the jury would have believed his protestation of innocence over the eyewitness testimony of the victims (Brown and Stone), as well as the testimony of Alexis Dallas and Monique Howard—the two women who assisted Petitioner and Corbitt's flight from the scene. Those witnesses provided convincing testimony as to Petitioner's guilty, and there is no reason to believe the jury would have rejected their testimony in favor of Petitioner's had he chosen to testify. Thus, Petitioner has failed to show that no fairminded jurist could agree with the state court's finding under prong two of *Strickland*.

Support for that conclusion can be found in *Isom v. Sec'y, Fla. Dep't of Corr.*, 569 F. App'x 660 (11th Cir. 2014)—a case involving a similar situation. The petitioner in *Isom* claimed his attorney performed ineffectively by advising him that if he testified the jury would learn of his prior convictions. *Id.* at 663. Petitioner claimed that if he had testified, then he would have denied responsibility for the charges and

told the jury his version of events. *Id*. Rejecting that argument, the Eleventh Circuit concluded "it was not objectively unreasonable for the state trial court to conclude that, had [the petitioner] testified as proposed, the outcome of his trial would not have been different." *Id*. at 665. The *Isom* court explained that Petitioner's testimony "would have been contradicted by the testimony of the State's witnesses," and "he would have been subject to cross-examination, which would have potentially undermined" his direct exam testimony. *Id*.

What was true in *Isom* is true here. Accordingly, Petitioner is not entitled to habeas relief on Ground One.

> **2.   Ground Two:  Trial counsel was ineffective for failing to object to or challenge an inconsistent verdict.**

In Ground Two, Petitioner claims his attorney provided ineffective assistance by failing to challenge the jury's inconsistent verdict. Petitioner says the jury's special findings on the verdict form for Count I were inconsistent with respect to whether he carried a firearm. (Doc. 1 at 11).  The special findings were as follows:

> We further find during the commission of the attempted home invasion robbery the Defendant Ricardo Duncan (Check all that have been proven beyond a reasonable doubt, if any)

19

> A. Did actually possess and discharge a firearm, resulting in serious injury to Herman Brown
> B. Did actually possess and discharge a firearm
> C. Did actually possess a firearm
> C [sic]. Carried a firearm
> D. Carried a deadly weapon, not a firearm
> E. Carried a weapon

(Doc. 12-1 at 139). The jury placed an "X" in front of all the options. (*Id.*). Petitioner believes the jury's finding as to D (that he carried a deadly weapon not a firearm) was inconsistent with the jury's findings as to A, B, C, and C (that he carried, actually possessed, and discharged a firearm). According to Petitioner, if his counsel had challenged the verdict on this ground there is a reasonable probability Petitioner would not have received a mandatory minimum sentence under Florida Statutes § 775.087(2).

Petitioner unsuccessfully raised this argument in his Rule 3.850 motion. (Doc. 12-2 at 170-71). The state trial court found Petitioner had not met either of the *Strickland* prongs. As for prong one, the court found counsel had not performed deficiently because it was clear from the evidence and the verdict form that the jury intended to find Petitioner guilty on Count I of Attempted Home Invasion Robbery with Actual Possession of a Firearm with Discharge Resulting in Serious Injury to

20

the victim.  (Doc. 12-2 at 187-88).  As for prong two, the court found that even if counsel performed deficiently there was no prejudice because the jury's special findings on Count I (after the finding of actual possession and discharge of a firearm causing serious injury) were mere surplusage. (*Id.*).

The crux of Petitioner's claim is that the jury's verdict was flawed under state law.[6]  When an ineffective assistance of counsel claim involves a question of state law, a federal habeas court must defer to the state court's construction of its own law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). That means if the Florida courts "already ha[ve] told us how the issues would have been resolved under Florida state law had [trial counsel] done what [Petitioner] argues he should have done," then "federal habeas

---

[6] Petitioner would have no federal constitutional basis for challenging an inconsistent verdict.  *See Harris v. Rivera*, 454 U.S. 339, 345 (1981) (rejecting inconsistent verdict argument and explaining that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside"); *see also Senelus v. Atty. Gen., Fla.*, 806 F. App'x 806, 808 (11th Cir. 2020) (stating that "the Supreme Court has said many times that inconsistent jury verdicts resulting in a conviction are not unconstitutional").

courts should not second-guess [the state courts] on such matters." *Herring v. Sec'y, Dep't of Corrs.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (cleaned up).

Here, the Florida state court rejected Petitioner's argument and found no state law basis for concluding that things would have turned out differently had Petitioner's trial counsel made an inconsistent verdict argument. This Court will not second guess the state court determination on that issue of state law. *See generally Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."). And since there was no state law basis for trial counsel to make an inconsistent verdict argument, counsel did not perform ineffectively by failing to raise the issue. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained."). Accordingly, Petitioner has failed to show that he is entitled to habeas relief on Ground Two.

3. **Ground Three: Trial counsel was ineffective for failing to adequately move for judgment of acquittal regarding possession of a firearm.**

In Ground Three, Petitioner alleges trial counsel provided ineffective assistance by not moving for a judgment of acquittal (JOA) on the firearm possession charge. (Doc. 1 at 14). Petitioner unsuccessfully made this argument in his Rule 3.850 motion, with the state trial court finding neither deficient performance nor prejudice under *Strickland*. (Doc. 12-2 at 188). In reaching that conclusion, the state court explained there was sufficient evidence showing Defendant actually possessed a firearm on November 5, 2013. (Doc. 12-2 at 188-89).

The state court's determination was a reasonable application of *Strickland*. Petitioner's counsel did not perform deficiently by failing to make a JOA motion on the firearm possession count because such a motion would have been clearly meritless. *See generally Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1297 (11th Cir. 2017) (stating that "an attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief").

A motion for JOA should not be granted where the State has produced competent, substantial evidence to support every element of the crime. *Gay v. State*, 607 So. 2d 454, 457 (Fla. 1st DCA 1992). "Competent evidence is matter probative of the fact to be proved; that is, relevant evidence that does not fit within any rule of exclusion. Evidence is substantial if a reasonable mind might accept it to support a conclusion." *Brumley v. State*, 500 So. 2d 233, 234 (Fla. 4th DCA 1986).

Petitioner was convicted of possessing a firearm by a convicted felon. The issue of what evidence is sufficient to establish a state offense is a matter of state law. And the state court here found the evidence was sufficient, such that any motion for JOA would have been meritless. This Court will defer to that state law determination. *See Vega v. Sec'y, Dep't of Corr.*, No. 17-14778, 2021 WL 4439245, at *6 (11th Cir. Sept. 28, 2021) (rejecting habeas petitioner's claim that counsel was ineffective for failing to move for JOA because whether evidence was sufficient rested on an interpretation of state law); *see also Combs v. Sec'y, Dep't of Corr.*, No. 19-14406-G, 2020 WL 2319889, at *2 (11th Cir. Mar. 6, 2020) ("[C]ounsel was not ineffective for arguing in support of a judgment of acquittal only that there was no forced entry to sustain a burglary

conviction, as we defer to the state court's application of its own law in determining that there was sufficient evidence on all the elements to allow the charge to go to the jury.").

In any event, the trial transcript shows there was ample evidence that Petitioner actually possessed a firearm. For example, Herman Brown testified that he saw Petitioner pull out a gun and shoot him in the buttocks. (Doc. 12-2 at 236-39, 245-46). And Alexis Dallas testified that after the incident Petitioner gave her a black revolver and told her to throw it out the window. (*Id*. at 668-70). Monique Howard also testified that Petitioner had a gun. (*Id*. at 407). Given that multiple eyewitnesses placed a gun in Petitioner's hand, there was more than sufficient evidence to show he actually possessed a firearm. *See Thompson v. State*, 911 So. 2d 1252, 1254 (Fla. 4th DCA 2005) (recognizing that the "clearest example" of evidence showing actual possession of a firearm is "eyewitness testimony placing" the firearm within the defendant's "grasp"). Accordingly, Petitioner has failed to show that he is entitled to habeas relief on Ground Three.

4.     **Ground Four:  Trial counsel was ineffective for failing to object to or challenge the State's improper argument regarding the law of principals.**

In Ground Four, Petitioner argues that his trial counsel performed ineffectively by failing to object when the prosecutor discussed the law of principal liability in his closing argument.  The basis for the Petitioner's argument is the following statement from the prosecutor's closing argument:

> If you find that Ricardo Duncan and Marquis Corbitt [one of the co-defendants] were principals, he's guilty for everything Marquis Corbitt did, just like Mr. Duncan went in that house himself, just like Mr. Duncan put that gun to Athena Stone's head; he's responsible for that.
> . . . .
>
> So Mr. Duncan is responsible for going in that home and looking for the money that Mr. Corbitt was doing in that kitchen, digging around for things; Mr. Duncan was legally responsible for [sic].

(Doc. 1 at 17).  According to Petitioner, this argument was improper because there was no evidence showing that he intended to commit attempted home invasion robbery or that he aided anybody else in committing that crime.  (Doc. 1 at 17-18).  Petitioner claims his attorney should have objected to the prosecutor's argument, and had he done so

26

Petitioner believes there is a reasonable probability he would have been acquitted.  (*Id.* at 18).

Petitioner unsuccessfully raised this argument in his Rule 3.850 motion.  (Doc. 12-2 at 172-74).  Rejecting it, the state trial court found neither deficient performance nor prejudice under *Strickland*.  (*Id.* at 189-90).  The state court reasoned that the argument was proper and a "principals" jury instruction was appropriately given because evidence at trial showed Petitioner and Corbitt jointly attempted armed entry into the victim's home for the purpose of taking the victim's property and/or drugs.  (*Id.* at 190).  As such, the state court found Petitioner's counsel did not perform ineffectively by failing to raise what would have been a meritless objection.  (*Id.*).

The state court's factual determinations with respect to the evidence presented at trial are supported by the trial transcript.  There was ample evidence showing that Corbitt and Petitioner were involved in a joint attempt to enter the victim's home for the purpose of committing a robbery.  That evidence included the testimony of Brown and Stone (the victims), as well as the testimony of Dallas and Howard. Petitioner, therefore, has failed to show that the state court's factual

findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Petitioner has also failed to show the state court's determination involved an unreasonable application of *Strickland*. As with other issues discussed above, the question of whether an argument by the prosecutor was proper under state law and whether a particular jury instruction was warranted are questions of state law. Thus, this Court will not second-guess the state court's determinations on those questions. *See Jamerson v. Sec'y, Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (recognizing that a "jury instruction that was allegedly incorrect under state law is not a basis for habeas relief") (cleaned up). And because the state court found there was no merit to those state law arguments, Petitioner's counsel could not have provided ineffective assistance by failing to either object to the prosecutor's closing argument and/or challenge the jury instructions. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (finding that counsel was not ineffective for failing to make a state law argument that the state courts concluded would have been

28

overruled).  Accordingly, Petitioner has failed to show that he is entitled to habeas relief on Ground Four.

5. **Ground Nine:  Trial court reversibly erred in allowing the testimony of a police detective concerning the contents of a jail telephone call made by the co-defendant**

In Ground Nine, Petitioner claims the trial court erred by allowing statements made by his co-defendant on a recorded jail call that incriminated Petitioner.  (*Id.* at 29-30).[7]  According to Petitioner, the admission of the co-defendant's statements violated the Confrontation Clause rule set forth in *Bruton v. United States*, 391 U.S. 123 (1968).  (*Id.* at 29).  Petitioner raised this argument on direct appeal to the First DCA, and it was rejected in a one-word opinion that says "Affirmed."  (Doc. 12-1 at 1462).  The First DCA's decision was the last state court adjudication

---

[7] Petitioner alleges in his § 2254 petition that he was unable to include facts supporting this claim because his state court pleading (his initial brief on direct appeal) was lost by prison officials at his previous institution.  (Doc. 1 at 29).  Petitioner incorporates the factual and legal arguments from his state court brief and asks the Court to consider it.  (*Id.*).  Thus, the Court has included the allegations from Petitioner's direct appeal brief.

on the merits of Petitioner's claim, so it is the one this Court will review under § 2254(d). *Greene v. Fisher*, 565 U.S. 34, 40 (2011).[8]

Petitioner's *Bruton* claim[9] can be easily resolved. Petitioner and Corbitt had their trials severed. At Petitioner's trial, Det. Sandra Meyers testified that on a recorded jail call Corbitt said that on the day of the incident a weapon was thrown from the van while the police chased it. (*See* Doc. 12-1 at 945-46). Petitioner claims that the introduction of this statement by Corbitt violated the *Bruton* rule. The first problem for Petitioner is that the *Bruton* rule deals with joint trials, but he and Corbitt did not have a joint trial. *See Bruton*, 391 U.S. at 137 (stating that "in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for [the defendant's] constitutional right of cross-examination"); *see also United States v. Hill*, 901 F.2d 880, 883

---

[8] "[T]he summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002).

[9] In *Bruton*, the Court held that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (explaining the rule of *Bruton*).

(10th Cir. 1990) (recognizing that "if the district court grants a motion to sever, *Bruton* problems will never arise"). And there can be no *Bruton* violation if there are separate trials. *See United States v. Valdes-Fiallo*, 213 F. App'x 957, 960 (11th Cir. 2007) (rejecting argument that *Bruton* was violated in a severed trial because "the *Bruton* rule only applies to situations in which a non-testifying co-defendant's statement is admitted against a defendant in a joint trial"); *see also* 21A Charles Alan Wright & Kenneth Graham, Jr., Federal Practice and Procedure § 5064.2 (2d ed. 2005) (recognizing that "*Bruton* does not apply where the co-defendant's statement is admitted against the defendant in a separate trial"). Indeed, a common argument for severing the trials of codefendants is the avoidance of *Bruton* problems. *See Richardson*, 481 U.S. at 209 (explaining that "a certain way of assuring compliance [with *Bruton*] would be to try defendants separately whenever an incriminating statement of one of them is sought to be used"); *see also United States v. Taylor*, 186 F.3d 1332, 1335 (11th Cir. 1999) (discussing whether severance was needed to avoid *Bruton* problems at trial). Because Petitioner and Corbitt had their trials severed, the introduction of

Corbitt's statement in Petitioner's severed trial did not violate the *Bruton* rule.

The second problem for Petitioner is that (even if *Bruton* applied in a severed trial), there was no *Bruton* violation here because Corbitt's recorded jail statement was non-testimonial. The Eleventh Circuit has held that because *Bruton* is a Confrontation Clause rule,[10] it only applies to "testimonial" statements. *See United States v. Hano*, 922 F.3d 1272, 1287 (11th Cir. 2019) (holding that "*Bruton* applies only to testimonial statements…So the same principles that govern whether the admission of testimony violated the Confrontation Clause control whether the admission of the statements of a nontestifying codefendant against a defendant at a joint trial violate *Bruton*"). A statement is "testimonial" for Confrontation Clause purposes if it was "procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (cleaned up). Statements made between coconspirators, friends, and family members are not testimonial

---

[10] After the Supreme Court's landmark decision in *Crawford v. Washington*, 541 U.S. 36 (2004), the Confrontation Clause only applies to statements that are "testimonial" in nature.

in nature because they are not made with the primary purpose of substituting for trial testimony. *See United States v. Reason*, 571 F. App'x 828, 831 (11th Cir. 2014) (holding that conversation between coconspirators was not testimonial); *see also United States v. Makarenkov*, 401 F. App'x 442, 444 (11th Cir. 2010) (finding that statements made to a confidential informant were not testimonial).

Here, the statement in question was made by Corbitt to a friend or family member on a recorded jail call. No reasonable person would conclude that Corbitt's primary purpose in making the jail call was the creation of a "substitute for trial testimony." *Clark*, 576 U.S. at 245; *see also Williams v. Illinois*, 567 U.S. 50, 84 (2012) (explaining that when deciding if a statement is testimonial, courts must "look for the primary purpose that a reasonable person would have ascribed to the statement, taking into account all of the surrounding circumstances"). Thus, the jail call by Corbitt was the type of statement that falls outside the definition of a testimonial statement. *See Thomas v. Sec'y, Fla. Dep't of Corr.*, 643 F. App'x 827, 829 (11th Cir. 2016) (holding that statements made to a family member on recorded jail calls were not testimonial). And that means the trial court did not violate the Confrontation Clause by

admitting the statement from Corbitt's jail call.   The state court's adjudication of Ground Nine was, therefore, neither contrary to nor an unreasonable application of clearly established federal law.

## IV.   Conclusion

For the reasons above, Petitioner's habeas petition should be denied because Grounds One, Two, Three, Four, and Nine fail to meet the standard set forth in 28 U.S.C. § 2254(d), and Grounds Five, Six, Seven, and Eight are procedurally barred.

## V.   Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the Court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a

constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336  (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his [or her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district judge deny a certificate of appealability.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that:

1.    The petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

3.    The Clerk of Court be directed to close this case.

At Pensacola, Florida, this 11th day of January 2024.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

## **Notice to the Parties**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.